NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0124n.06

Case No. 20-1500

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **FILED**<br>Mar 09, 2021<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **MAURICE SCOTT,** | ) | **COURT FOR THE WESTERN** |
| | ) | **DISTRICT OF MICHIGAN** |
| *Defendant-Appellant*. | ) | |
| | ) | |

**Before: BATCHELDER, MOORE, and BUSH, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** On three separate occasions, Maurice Scott sold methamphetamine to a confidential informant conducting controlled buys for the DEA, which measured the total quantity as 281.4 grams and the qualities as 100%, 86%, and 66% pure. Scott pleaded guilty to distributing 50 grams or more of methamphetamine, 21 U.S.C. § 841(a)(1) & (b)(1)(A), but for sentencing purposes, he challenged the DEA's drug purity determination and he offered to provide information towards a "safety valve" proffer, U.S.S.G. § 5C1.2.

Because Scott believed, based on his experience with methamphetamine, that the reported purity was incorrect, he moved the district court to order it retested. Scott did not suggest any problem with the lab's instrumentation, testing protocol, or personnel. Nor did he elaborate on his "experience" or explain the basis for his subjective belief. In fact, he did not even provide an affidavit. The entire claim was presented by his attorney. The court denied the motion.

When Scott met with case agents for the safety-valve proffer, he identified his supplier by name ("Mingo"), along with a physical description and where they had met, but when pressed for more, he could not or would not answer. The agents thought he was lying, told him so, and

continued to question him until Scott abruptly ended the interview. Because the agents thought Scott was not sufficiently honest or forthcoming, they denied him the safety-valve proffer.

Scott raised both issues at the sentencing hearing but could not persuade the court. On the drug-purity issue, which the court had already rejected when it denied Scott's motion for retesting, the court added that even if all the methamphetamine were only 66% pure, the equivalency amount would still have been above 3,000 and resulted in the same base-offense level. On the safety-valve issue, the government called the case agent to testify about the interview, and introduced his notes from the interview, to support its assertion that Scott "has not provided any information whatsoever about the offense in this case and [Scott] cut off the interview after telling the agents about some guy named Mingo that he met in Chicago a year prior to the offense." The court explained that the § 5C1.2 safety-valve requires the defendant to act affirmatively to provide information to the government's satisfaction, found that Scott had provided "substantively no meaningful disclosure of any kind," and concluded that Scott was not entitled to the benefit of the safety valve.[1]

The court set the base offense level at 32, deducted three levels for acceptance of responsibility for a total offense level of 29, which, with a criminal history category of II, yielded an advisory guideline range of 97-121 months in prison. But this offense has a statutory mandatory minimum of 120 months. The court considered the § 3553 factors, expressed its regret that Scott had not seized the safety-valve opportunity, and sentenced him to 120 months.

On appeal, Scott argues that the district court erred by denying him safety-valve relief because, he claims, he provided the government with all the information he possessed. But as the

---

[1] It perhaps bears mention that U.S.S.G. § 5C1.2(a)(1) requires that "the defendant does not have more than 1 criminal history point," whereas Scott had three (3) criminal history points, meaning that Scott was technically ineligible for the § 5C1.2 safety valve, pursuant to the Guidelines. The court explained, however, that its "practice has been [that,] if the safety valve is established by statute as amended in the First Step Act, the [c]ourt would often apply a variance to address that on the guideline side of the ledger." Therefore, while the sentencing court referred to this as a consideration of the "safety valve," and we have done likewise for consistency, this was an analysis under 18 U.S.C. 3553(f), for which Scott would have been eligible had he complied.

government proved at the sentencing hearing, without any evidence to the contrary, Scott ended the § 5C1.2 interview before they had even discussed the events underlying his conviction much less any events or offenses that were part of the same course of conduct or common scheme or plan. That is, Scott's claim that he provided all the information he possessed is demonstrably and unequivocally untrue. Moreover, when providing information to the government under § 5C1.2, the defendant must provide any and all information he has about the offense of conviction, relevant conduct, or any offenses that were part of the same course of conduct or common scheme. *United States v. Barron*, 940 F.3d 903, 917 (6th Cir. 2019). This is a "greater [requirement] than [that] for an acceptance of responsibility reduction"; it "clearly requires an affirmative act by the defendant [to] truthfully disclos[e] all the information he possesses," which is "more than merely answer[ing] all questions posed by the government." *Id.* (quotation marks, alterations, and citations omitted). Scott fell well short of this requirement.

Scott also argues that the court abused its discretion by denying his motion to retest the seized methamphetamine. Following the same approach that he took in the district court, Scott's attorney claims that "based on [Scott's] knowledge and experience," "the drug quantity reported by the lab was inaccurate." But, as in the district court, this is just an attorney's conjecture; Scott has provided no affidavit or testimony to state that this is truly his belief, to reveal the "knowledge and experience" that would inform this belief, or to describe exactly how that knowledge and experience make this belief reasonable, and not merely idle speculation. It also bears recognizing that, in its denial order, the district court offered that Scott would have the opportunity to provide such testimony at the sentencing hearing. Scott did not do so.

We AFFIRM the judgment of the district court.